UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LAVONNE ROACH,<br><br>Defendant. | 5:97-CR-50041-01-KES<br><br>ORDER GRANTING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, LaVonne Roach, requests reconsideration of the court's order denying her compassionate release dated September 10, 2020 (Docket 351) and renews her request for relief under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 352. Plaintiff, the United States of America, opposes the motion. Docket 354. For the following reasons, the court grants Roach's motion for reconsideration and grants her compassionate release.

## BACKGROUND

The background of Roach's case was set forth in the court's order dated September 10, 2020. Docket 351. To summarize, on March 2, 1998, Roach was sentenced to 360 months in custody and five years of supervised release for conspiracy to distribute a controlled substance (methamphetamine) in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 144, 145. She is incarcerated at Federal Prison Camp Alderson (FPC Alderson), a minimum-security federal prison camp in Alderson, West Virginia. Roach is eligible for home confinement on January 14, 2023, and her current anticipated release date is July 14, 2023. Docket 341 at 2130.

Roach is a 56-year-old, Native American female. Docket 360 at 1. As documented in her medical records, Roach suffers from several chronic health conditions. *See* Dockets 360, 362. These include obesity, major depressive disorder, anxiety, chronic pain syndrome, migraine, hypertension, hypokalemia, hypothyroidism, post-traumatic stress disorder (PTSD), and cerebral infarction. Docket 362 at 33-36, 51. Roach takes medication to treat her chronic pain syndrome, hyperlipidemia, major depressive disorder, and other personality disorders. *Id.* at 53. Roach's body mass index (BMI) has fluctuated between 30.8 and 31.3 in 2020, but was recently recorded as 29.95 on November 6, 2020. *See* Docket 351 at 2; Docket 362 at 109.

In support of her pro-se request for reconsideration, Roach argues the court did not consider sentencing disparity, her extensive rehabilitation, the health risk of COVID-19, and her extensive time served. Docket 352 at 1. The government opposes reconsideration, arguing that Roach has not met her burden to support compassionate release and presents no new arguments or evidence compelling a different result. Docket 354 at 1-2.

On November 9, 2020, Roach updated her request in a supplemental letter to the court, which was received and filed on November 20, 2020. Docket 359 at 1. Roach advises that her health conditions have recently required her to be hospitalized. *Id.* These problems include inability to maintain stable and adequate sodium and potassium levels. *Id.* Roach states she was rushed to the hospital on November 3, 2020 because her sodium level was critically low, and she remained hospitalized until November 6, 2020. *Id.* According to Roach, the

attending hospitalist prescribed her sodium tablets upon her discharge, which were approved by FPC Alderson, but she has not received them. *Id.* at 2. Roach says she has tried to self-correct the problem by requesting table salt from the commissary to no avail. *Id.* Additionally, Roach says she tested positive for COVID-19 shortly after returning to FPC Alderson. *Id.* at 3. Roach is extremely concerned about her health and the asserted lack of appropriate care within FPC Alderson for her medical conditions. *Id.* at 4.

Roach's medical records confirm her representations to the court. Docket 362 at 18-20, 43-46, 48, 55, 63-99. She was admitted to the Greenbrier Valley Medical Center on November 3, 2020 for acute on chronic hyponatremia[1] and discharged on November 6, 2020. *Id.* at 63, 70. Her health concerns were noted as diarrhea, hyponatremia, chronic hyponatremia, hypokalemia, overactive bladder, major depressive disorder, hypothyroidism, migraine, essential hypertension, seizure disorder, iron deficiency, hyperlipidemia, constipation, and former smoker. *Id.* at 63-64. Dr. Theresa Mellette, the attending physician, noted that Roach's medications for seizure disorder may be causing her hyponatremia, but the benefit of the anti-seizure medication indicated no changes should be made. *Id.* at 64. Dr. Mellette recommended other changes to

---

[1] Hyponatremia is a condition that occurs when the level of sodium in the blood is abnormally low. *See* Mayo Clinic https://www.mayoclinic.org/diseases-conditions/hyponatremia/symptoms-causes/syc-20373711 (last visited Jan. 8, 2021). According to Mayo Clinic, a normal blood sodium level is between 135 and 145 milliequivalents per liter (mEq/L). *Id.* Hyponatremia occurs when the sodium level falls below 135 mEq/L. *Id.* Upon admission to the hospital, Roach's sodium level was 121. Docket 362 at 65. At discharge the sodium level had improved to 129. *Id.* at 78.

her medication regimen to manage the side effects Roach was experiencing, including permanently discontinuing her hydrochlorothiazide (used to treat hypertension) and substituting enalapril. *Id.* Sodium tablets were also added. *Id.* at 65, 111.

In an additional update from Roach, filed on December 8, 2020, she states she is struggling with her high blood pressure, is getting no assistance from the facility's medical staff, and is having the worst medical experience in 23 years of incarceration. Docket 361 at 1. Roach urges the court to recognize the 23 years she has served, recognize the positive changes she has made in her life, and allow her release so she can be reunited with her family. *Id.* at 1-2. The government has not responded to Roach's updated reports to the court.

## DISCUSSION

The court detailed the governing law and analysis it uses when confronted with a compassionate release motion in its Order dated September 10, 2020. Docket 351. For current purposes, it is sufficient to note that because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). But Congress made changes to the law, through the First Step Act (FSA), Pub. L. No. 115-391, 132 Stat. 5194 (2018), which permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. *Id.* § 603(b). Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave custody early. 18 U.S.C. § 3582(c)(1)(A)(i). When considering whether to grant

4

a motion for compassionate release the court must consider the 3553(a) sentencing factors and the applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

As previously noted, the Sentencing Commission's policy statements regarding the "extraordinary and compelling reasons" to grant early release have not been updated since the FSA Act was passed. *See* USSG § 1B1.13 (Nov. 2018). Prior to the passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios. *Id.* § 1B1.13, comment. (n.1(A)-(C)). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* Additionally, there is a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13, comment. (n.1(D)).

Assuming the court's discretion to consider compassionate release is at least as broad, if not more so, as the outdated policy statement of the Sentencing Commission,[2] the court is convinced that Roach has demonstrated

---

[2] Because the First Step Act changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 578-80 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D.

5

circumstances warranting compassionate release under subdivision (A), medical condition of the defendant, of § 1B1.13, Application Note 1.

Application Note (1)(A)(i) provides that extraordinary and compelling reasons exist if the defendant is suffering from a serious physical condition that substantially diminishes his or her ability to provide self-care within the confines of the correctional facility and he or she is not expected to recover. USSG § 1B1.13, comment. (n. 1(A)(ii)). Roach has a complicated medical history that is currently not being well managed while incarcerated at FPC Alderson. When the court's order was issued on September 10, 2020, it appeared Roach was able to manage her conditions while incarcerated and those conditions also appeared to be stable, controlled, and monitored. *See* Docket 351 at 9. That is no longer the case. While chronic conditions that can be managed in prison are ordinarily not a sufficient basis for compassionate release, the court concludes Roach's chronic conditions are *not,* in fact, being managed.

Without unnecessarily disparaging the medical care at FPC Alderson, Roach's chronic struggle to maintain her sodium levels worsened to the point of

---

Conn. Feb. 7, 2020). A fellow district court in this district has held that the "court retains its independent authority to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring." *United States v. Magnuson,* 5:15-cr-50095-JLV, Docket 84 at 11 (D.S.D. Dec. 11, 2020) (granting motion for relief under FSA to defendant Magnuson) (internal quotations omitted). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."); *see also United States v. Frith*, 2020 WL 4229160, at *2 (D.N.D. July 23, 2020).

requiring emergency hospitalization as reflected in her medical records. She was hospitalized for several days and provided intravenous fluids to stabilize her condition. Roach's condition was noted to be acute on chronic[3] hyponatremia. Docket 362 at 63. That her sodium level was dangerously low to the point of requiring urgent hospitalization is sufficient evidence that Roach's ability to provide self-care for her chronic conditions is substantially diminished within the environment of FPC Alderson.

As reasons for compassionate release, Roach additionally requests the court to consider the 23 years she has spent in custody and her extensive rehabilitation while incarcerated. The court finds these arguments appropriate to consider under the sentencing factors and public safety considerations. Even with extraordinary and compelling reasons established, a sentence reduction must still be consistent with the 18 U.S.C. § 3553(a) factors and public safety interests provided in 18 U.S.C. § 3142(g). *See* 18 U.S.C. § 3582 (c)(1)(A); USSG § 1B1.13.

The 3553(a) factors direct the court to consider, among other things, the kinds of sentences available, the sentencing range established by the guidelines, the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and to afford adequate deterrence, and the need to avoid unwarranted sentence disparities

---

[3] The term "chronic" as used to describe medical conditions generally refers to those that are persistent, lasting one year or more, and require ongoing medical attention or limit activities of daily living, or both. Ctrs. for Disease Control, https://www.cdc.gov/chronicdisease/about/index.htm. (last visited Jan. 8, 2021).

between similar defendants. 18 U.S.C. § 3553(a). This analysis favors Roach's release.

Here, Roach received a lengthy sentence for her crime and role in the offense of drug trafficking. At the sentencing hearing, the court attributed at least 42.15 kilograms of methamphetamine to Roach's conduct. Docket 151 at 25. Under the Sentencing Guidelines applicable at the time, more than 42 kilograms of methamphetamine resulted in a base offense level of 38. *Id.* at 27. The court added a four-point upward adjustment for Roach's leadership role. *Id.* The total offense level of 42 resulted in a guideline range of 360 months to life based on her criminal history category III. *Id.* at 28. The court sentenced Roach to 360 months imprisonment.

Roach would face a significantly less harsh sentencing protocol if convicted today. To start, the sentencing guidelines are no longer mandatory on sentencing courts. Additionally, Amendment 782 reduced by two levels the offense levels assigned to drug quantities. United States Sentencing Commission, https://www.ussc.gov/topic/2014-drug-amendment. (last visited Jan. 8, 2021). Applying the two-level reduction, Roach's total offense level decreased from 42 to 40. Using her same criminal history category III, this yields an advisory sentencing range of 292-365 months under the current guidelines.

As of July 13, 2020, Roach has served 22 years, 9 months, and 12 days of her sentence. Docket 342 at 2128. Since BOP made that calculation, Roach has served approximately an additional six months. In total, Roach has served

approximately 279 months in custody. As of July 13, 2020, she had earned good conduct time of 1107 days or about 36 months. *See id.* Accounting for her good conduct time, Roach has approximately 314 months to her credit, which is well within the current guideline range for her convicted offense. A sentence reduction to time served, therefore, reflects the seriousness of the offense, provides just punishment, and avoids unwarranted sentencing disparities.

Roach also requests the court to consider her extensive rehabilitation in custody. Rehabilitation by itself is not an extraordinary and compelling reason; however, her rehabilitative efforts may be considered in conjunction with other factors. *See United States v. Brown,* 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019). Roach appears, to her credit, to have worked on improving herself in custody. Docket 342 at 2124-25. She has undertaken substantial educational and vocational opportunities to prepare for life beyond prison. BOP records reflect that Roach received a minimal security designation, and she has earned substantial good conduct time. Through 279 months in custody, her disciplinary record consists of infrequent violations for minimal transgressions, such as unauthorized physical contact (hugging and touching), interfering with staff, disposing of items, and refusing to obey an order. *Id.* at 2122-23. She has not had any incidents involving violence or aggression. *See id.* Moreover, her convicted offense was non-violent. The court is persuaded that Roach does not pose a danger to any person or the community under the relevant considerations in 18 U.S.C. § 3142(g).

In sum, the court concludes that the worsening of Roach's complicated

9

medical conditions while incarcerated, her need for appropriate medical care and attention that she does not appear to be receiving while in custody, along with her extensive time served constitute extraordinary and compelling reasons for her early release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Roach's rehabilitative efforts demonstrate that she is overall a good candidate for compassionate release, and her release does not pose a danger to the safety of others.

## CONCLUSION

Therefore, it is hereby ORDERED that:

1. Roach's motion for reconsideration of compassionate release (Docket 352) is granted, and compassionate release is hereby granted.
2. Roach's term of imprisonment is hereby reduced to time served, subject to the following paragraphs.
3. Execution of this order is stayed for fourteen (14) days to allow the Bureau of Prisons and United States Probation an opportunity to make the necessary arrangements for Roach's release, including an opportunity to quarantine.
4. Upon release from BOP custody, Roach will be on supervised release for a term of five (5) years.
5. An amended judgment will be entered separately to reflect the amended sentence and to set forth all conditions of supervision that will apply to Roach.

6. The following are the standard and special conditions of supervision that shall apply to Roach.

**Standard Conditions of Supervision**:

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2. After initially reporting to the probation office, you will receive instructions from the Court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the Court or the probation officer.

4. You must answer truthfully the questions asked by your probation officer.

5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6. You must allow the probation officer to visit you at reasonable times, at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the Court.

12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13. You must follow the instructions of the probation officer related to the conditions of supervision.

**Special Conditions:**

1. You must participate in and complete a cognitive behavioral training program as directed by the probation office.

2. You must reside and participate in a residential reentry center as directed by the probation office. You will be classified as a prerelease case.

3. You must submit your person, residence, place of business, vehicle, and possessions to a search conducted by a United States probation officer without a warrant when the officer has reasonable suspicion of a violation of a condition of supervision.

4. You must not consume any alcoholic beverages or intoxicants. Furthermore, you must not frequent establishments whose primary business is the sale of alcoholic beverages.

5. You must participate in a program approved by and at the direction of the probation office for treatment of substance abuse.

6. You must undergo inpatient/outpatient psychiatric or psychological treatment, as directed by the probation office. You must take any prescription medication as deemed necessary by the treatment provider.

7. You must submit a sample of your blood, breath, or bodily fluids at the discretion or upon the request of the probation office.

Dated January 15, 2021.

                BY THE COURT:

                */s/ Karen E. Schreier*
                KAREN E. SCHREIER
                UNITED STATES DISTRICT JUDGE